IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR HINOJOSA-MORENO, | ) | |
| Petitioner, | ) | Civil Action No.: 3: 14-cv-205 |
| v. | ) | United States District Judge |
| | ) | Kim R. Gibson |
| MARK KIRBY, Warden FCI Loretto, | ) | United States Magistrate Judge Cynthia Reed Eddy |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

It is respectfully recommended that the petition for writ of habeas corpus filed by Petitioner, Victor Hinojosa-Moreno, be denied and this case be closed.

**II. REPORT**

Petitioner, Victor Manual Hinojosa-Moreno ("Petitioner" or "Hinojosa-Moreno"), is a federal inmate incarcerated at FCI Loretto. He has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he challenges disciplinary actions taken against him as a result of an incident report issued to him on August 28, 2013. He requests that the Court should, *inter alia*, direct Respondent to restore his lost privileges and forfeited good time. Petition, Prayer for Relief, at 7.

**A. Background**

**1. Relevant History**

On September 20, 2010, Hinojosa-Moreno was sentenced in the United States District Court for the Southern District of Texas to a 180-month term of imprisonment, to be followed by

1

a five-year term of supervised release for Possession with Intent to Distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(D), and 846. On November 19, 2010, Hinojosa-Moreno was committed to the custody of the Bureau of Prisons (the "BOP"). *See* Exhibit 1A to Response (ECF No. 8-2). Assuming he receives all good conduct time available to him pursuant to 18 U.S.C. § 3624(b), Hinojosa-Moreno's projected release date is August 14, 2021.

### 2. The Random Urine Analysis, Investigation, and Disciplinary Hearing

On August 28, 2013, at 5:40 AM, Hinojosa-Moreno was advised by FCI-Loretto staff that he had been selected for a random urine analysis. He remained under constant supervision for two hours and twenty minutes, but refused to provide a urine specimen during the allotted time. Petitioner reported that he was unable to provide the urine specimen because he had used the restroom prior to staff notifying him of the request for a urine specimen.

At 8:25 am, on that same day, Incident Report Number 2485392 was issued which charged Petitioner with Refusing to Provide a Urine Sample, Refusing to Breathe into a Breathalyzer, and/or Refusing to Take Part in Drug Abuse Testing, in violation of Code 110. Upon providing Petitioner with the Incident Report, the investigator advised Hinojosa-Moreno of his right to remain silent during the disciplinary process. The investigator noted that Petitioner stated he understood his rights. Petitioner stated to the investigator, "I went to the bathroom prior to them coming and getting me. I never refused but I just can't go." *See* Exh. 2a (ECF No. 8-2).

At the completion of the investigation, the investigator referred the Incident Report to the Unit Discipline Committee ("UDC") for an initial hearing. On August 30, 2013, the UDC convened for an Initial Hearing for Incident Report Number 2485392. Petitioner told the UDC,

"I can't do it. I used the bathroom early in the morning." *Id.* At the conclusion of the hearing, the UDC referred the Incident Report to the Discipline Hearing Officer ("DHO") for final disposition. *Id*. The UDC recommended that if the DHO determined Hinojosa-Moreno committed the prohibited conduct, the DHO should impose the appropriate sanctions. *Id*.

On October 24, 2013, the DHO conducted Petitioner's discipline hearing at FCI Loretto. The Infectious Disease Coordinator appeared at the hearing to serve as a translator. The DHO read Petitioner his rights; Petitioner indicated he understood his rights and had no documentary evidence to present. The DHO also noted that Hinojosa-Moreno did not request any witnesses and he waived his right to a staff representative. *See* Exhibit 2d (ECF No. 8-8). Plaintiff told the DHO, "I couldn't do it. I used the bathroom early in the morning; I did not know there was a time limit. I tried but could not do it." *Id*. at 1.

The DHO considered the Incident Report and Petitioner's response, as well as a medical assessment report, dated August 29, 2013, which indicated that Hinojosa-Moreno was not prescribed any medication or had any medical condition that would preclude him from being able to provide a urine specimen as requested within the two hours and 20 minutes afforded to him on August 28, 2013. At the conclusion of the discipline hearing, the DHO determined that Hinojosa-Moreno had committed the prohibited act of Refusing to Provide a Urine Sample (Code 110). *Id.* The DHO imposed the following sanctions: (1) 360 days disciplinary segregation (300 days suspended pending 180 days clear conduct); (2) disallowance of 40 days good conduct time; and (3) two years loss of visiting privileges.

On or about November 14, 2013, the written report of the DHO was issued. The DHO's report expressly states that "[t]he inmate has been advised of his right to appeal this action within

3

20 calendar days under the Administrative Remedy Procedure." The DHO's report was delivered to Hinojosa-Moreno on December 18, 2013. (*See* Petition, Exh. 6.)[1]

### 3. The Administrative Remedy Requests

On January 3, 2014, Hinojosa-Moreno submitted a Request for Administrative Remedy (Case Number 763534-F1) with the Warden at FCI Loretto in which he argued that he "did not at anytime refuse to provide urine sample requested . . . . [and] that even if . . . sample would've turned out false-positive, he had legal right to request further testing to prove otherwise." Exh. 8 to Petition (ECF No. 1-2). As relief, Hinojosa-Moreno requested that the "DHO findings be overruled and return Hinojosa-Moreno to status quo ante his DHO guilty findings and restore his good time and expunge the DHO report from his BOP file." *Id*.

On January 6, 2014, Hinojosa-Moreno's Administrative Remedy Request was rejected without a substantive response. The rejection notice explained that Petitioner submitted his request for appeal to the wrong level and that DHO appeals "are done at the regional level." Exh. 9 to Petitioner (ECF No. 1-2).

On January 12, 2014, Hinojosa-Moreno submitted a second Request for Administrative Remedy to the Warden at FCI Loretto (Case Number 763534-F2), again requesting that the "DHO findings be overruled and return Hinojosa-Moreno to status quo ante his DHO guilty findings and restore his good time and expunge the DHO report from his BOP file." Exh. 11 to Petition (ECF No. 1-2). On January 13, 2014, this Request for Administrative Remedy was

---

[1] The DHO is required to prepare and provide an inmate with a written record of the hearing proceedings, including the reasons for any sanctions along with its decision. 28 C.F.R. § 541.8(h). This record must be given to the inmate "ordinarily within 15 work days of the decision" and the DHO must also ensure that the required information is entered into the SENTRY record keeping system as part of the inmate's Chronological Disciplinary Record. BOP Program Statement 5270.09.

denied without a substantive review. Petitioner was again advised that he filed his DHO appeal to the wrong level of administrative remedy process and Hinojosa-Moreno was again advised that "DHO appeals are done at the regional level." Exh. 12 to Petition (ECF No. 1-2).

On January 26, 2014, Hinojosa-Moreno submitted a Regional Administrative Remedy Appeal with the BOP Northeast Regional Office in which he challenged the decision of the DHO (Case Number 763534-F2). In his appeal, Petitioner argued that "he has been victim of cruel an (sic) unusual punishment during a random urinalysis" and that his prior Administrative Remedy Appeals were "misconstrued . . . for a DHO appeal" and "that prison employees' unprofessional conduct not only affected his safety and security, but also the safety and security and orderly running of all inmates and prison officials involved." Exh. 14 to Petition (ECF No. 1-2). As relief, Hinojosa-Moreno requested that his Administrative Remedy Complaint (BP-229(13) – ID # 763534-F2) be submitted and executed at the institutional level to remedy a pattern of alleged practice of "cruel an (sic) unusual punishment behalf prison employees, for the safety and security not only of inmate Hinojosa-Moreno, but for the safety and security and orderly running of all inmates and prison officials involved at the Federal 'Correctional' Institution in Loretto, Pennsylvania." *Id*.

On February 10, 2014, the Administrative Remedy Coordinator for the Northeast Regional Office notified Hinojosa-Moreno that his appeal was rejected without a substantive response because it was filed after the applicable appeal period. ("Regional Appeals (BP-10 must be received within 20 days of the . . . receipt of the DHO report.") The notice advised Petitioner that he could resubmit his Regional Appeal within ten days of the date of the rejection provided he could provide staff verification "for being untimely." Exh. 16 to Petition (ECF No. 1-2).

On February 17, 2014, Hinojosa-Moreno resubmitted his Regional Appeal with the BOP Northeast Regional Office stating that "[t]his is an Administrative Remedy Appeal (BP-10) appealing the repeated unlawful denial of his constitutional right to (1) File an Administrative Remedy Complaint (BP-229(13) – ID # 763534 – F2) seeking redress upon believing he has been unlawfully violated of his Civil and Constitutional rights to be free from cruel an (sic) unusual punishment." As relief, Hinojosa-Moreno requested "to remedy a pattern of alleged practice of cruel an unusual punishment behalf of prison employees, for the safety and security not only of inmate Hinojosa-Moreno, but for the safety and security and orderly running of all inmates and prison officials involved at the Federal 'Correctional' Institution in Loretto, Pennsylvania." Exh. 18 to Petition (ECF No. 1-2). On February 25, 2014, the Administrative Remedy Coordinator for the Northeast Regional Office notified Hinojosa-Moreno that his appeal was rejected without a substantive response because it was "untimely. Regional Appeals (BP-10) must be received within 20 days of the Warden / CCM response or receipt of the DHO report." Exh. 19 to Petition (ECF No. 1-2). The notice advised Hinojosa-Moreno that he could resubmit his Regional Appeal within ten days of the date of the rejection notice, if he could provide staff verification that he was not responsible for the untimely filing of his appeal. *Id.*

On March 4, 2014, Petitioner filed a Central Office Administrative Remedy Appeal in which he challenged the Regional Office's rejection of his Regional Appeal. Exhs 20 and 21 to Petition (ECF No. 1-2). On April 11, 2014, the Administrative Remedy Coordinator for the Central Office notified Hinojosa-Moreno that his appeal was rejected without a substantive response because it was filed in an untimely manner. The Rejection Notice also stated the following: "Concur with the Regions rationale for rejection. Obtain a staff memo stating the reason for your untimely filing to the Regional Office." Exh. 22 to Petition (ECF No. 1-2).

On May 2, 2014, Petitioner submitted a second appeal to the Central Office in which he stated that "Central Office reject reason #1 for rejecting inmate Hinojosa-Moreno's BP-11 is clear irrationale, because though not only his BP-11 was properly and timely filed, all inmate Hinojosa-Moreno's administrative legal complaint and appeals have been properly and timely filed. " As relief, Hinojosa-Moreno sought the following:

> pursuant to UNIFORM COMMERCIAL CODE (UCC) that if Central Office does not respond <u>in substance</u> to inmate Hinojosa-Moreno's instant resubmitted appeal (BP-11) within 30 days of receipt, either further rejecting or proceeding correcting originally reported complaint (BP-9) to Prison Officials, inmate Hinojosa-Moreno's claim . . . will stand as truth the denial of inmate Hinojosa-Moreno's legal Constitutional Rights to: 1). file an administrative complaint and appeals upon after believing was victim of cruel and unusual punishment behalf prison employees during a random urinalysis and 2) have Prison Officials' affirmative office obligations moving towards correcting his reported complaint for his safety and security.

Exh. 24 to Petition (ECF No. 1-2).

To date, Hinojosa-Moreno has not resubmitted his Regional Administrative Remedy Appeal with the staff verification memorandum challenging the disciplinary action taken in connection with Incident Report Number 2485392. In his Answer, Respondent argues, *inter alia,* that Hinojosa-Moreno has procedurally defaulted his habeas claims because he failed to exhaust his administrative remedies.

**B.     Discussion**

In order to obtain federal habeas relief under 28 U.S.C. § 2241, a prisoner must have first exhausted the BOP's administrative remedies. *See, e.g., Vasquez v. Strada,* 684 F.3d 431, 433 (3d Cir. 2012) (citing *Moscato v. Federal Bureau of Prisons,* 98 F.3d 757, 760 (3d Cir. 1996)). The exhaustion requirement is mandated because it promotes the important goals of: (1) providing the BOP with the opportunity to correct its own errors before the federal court becomes involved,

7

thus fostering administrative autonomy; (2) permitting the BOP to grant the relief requested if such relief is warranted, which conserves judicial resources; and, (3) allowing the BOP the opportunity to develop a factual record and apply its expertise, which facilitates judicial review in the event such review is required. See, e.g., *Moscato*, 98 F.3d at 761–62.

Respondent contends that Hinojosa-Moreno's failure to properly exhaust his administrative remedies amounts to a default of any habeas claim he has regarding his incident report. *Id. See, e.g., Beckford v. Martinez*, 408 F. App'x 518 (3d Cir. 010) (per curiam) (federal prisoner whose administrative appeal was untimely procedurally defaulted his habeas claims). To overcome the default, Hinojosa-Moreno must establish cause for his default and prejudice. *Id*. at 762 ("In sum, we hold that a federal prisoner who challenges a disciplinary proceeding within a federal institution, fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice."); *Beckford*, 408 F. App'x at 520 ("[T]he record reflects that [the petitioner's] administrative appeals were rejected as untimely. Absent a showing of cause and prejudice for his procedural default, review of the merits of [his] habeas petition is barred.").

The Court finds that Hinojosa-Moreno has not met that burden. He has failed to demonstrate any reason as to why this Court should excuse his default. In his Reply, Hinojosa-Moreno argues that he did exhaust his claims because his "actual submission is an administrative

remedy Complaint which is a separate legal issue, clearly not an Administrative Remedy Appeal. Reply, ECF No. 13 at ¶ 11.[2]

The record reflects that Hinojosa-Moreno submitted several Administrative Remedy Requests and Appeals in which he specifically challenged the disciplinary action taken in connection with Incident Report Number 2485392; however each of his Administrative Remedy Requests and Appeals was rejected without a substantive response. For each rejected Administrative Remedy submission, a rejection notice was generated advising him as to the technical errors connected with each filing. He was specifically advised that he could resubmit his Regional Appeal if he could provide a memorandum from institution staff indicating that Petitioner was not to blame for his failure to file a timely Regional Appeal. Instead of following the directions of Administrative Remedy Staff, Hinojosa-Moreno resubmitted his Appeals without a staff verification memorandum even though he was provided ten days to do so. Well over ten days has elapsed since Hinojosa-Moreno's last Appeal was rejected, and he has failed to correct his filing errors. Thus, the petition must be denied because Hinojosa-Moreno's claims are procedurally defaulted.

C.  **Certificate of Appealability**

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253) (as amended) codified standards governing the issuance of certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. *United States v. Cepero*, 224 F.3d 256, 264-54 (3d Cir. 2000); *abrogated on other*

---

[2] To the extent Petitioner seeks relief other than the restoration of good time credits and other privileges and expungement of his disciplinary record, it is recommended that those claims be dismissed as they are not cognizable under 28 U.S.C. § 2241.

*grounds by, Gonzalez v. Thaler*, ⸺U.S. ⸺, 132 S.Ct. 641 (2012); 28 U.S.C. § 2253(c)(1)(B). As such, this Court makes no certificate of appealability determination in this matter.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules, the parties are allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: May 21, 2015

cc: VICTOR HINOJOSA-MORENO
32788-198
LORETTO
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 1000
LORETTO, PA 15940

Amie S. Murphy
United States Attorneys Office
Email: Amie.Murphy@usdoj.gov